## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TINA MCPHERSON,                    )
                                   )
                  Plaintiff,       )
                                   )
          v.                       )        1:20CV710
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of            )
Social Security,                   )
                                   )
                  Defendant.[1]    )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tina McPherson, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 285-96), alleging an onset date of November 1, 2013 (see Tr. 285, 295).  Upon denial of those applications initially (Tr. 102-27, 158-62) and on reconsideration (Tr. 128-57, 166-83), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 184-85). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 65-101) and, following the retirement of that ALJ, attended a supplemental hearing before a new ALJ (Tr. 36-63).  The new ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 12-26.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 277-84), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2018.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date.
>
> 3.  [Plaintiff] has the following severe impairments: obesity; degenerative disc disease, cervical spine; status-post lumbar disc surgery, with residual degenerative disc disease and symptoms; calcaneal spurs bilateral lower extremities; right shoulder impingement, status-post arthroscopy; bilateral carpal tunnel syndrome; hypertension; headaches; depressive disorder; bipolar disorder; and anxiety disorder.
>
> . . .

2

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . except she can frequently balance, kneel, crouch, and climb ramps and stairs, occasionally stoop, crawl, and climb stepladders up to four feet in height, and can never climb ladders greater than four feet in height, ropes, or scaffolds. She can frequently handle, finger, push, pull, and reach overhead with her bilateral upper extremities, but can only occasionally perform overhead weightbearing. [She] is limited to occasional exposure to vibration, moving mechanical parts, and high, exposed places, and she can be exposed to up to moderate level noise. Mentally, [she] is limited to performing unskilled work, as defined by SSR 83-10, she can only occasionally interact with supervisors, co-workers, and the public, she cannot perform production pace work on assembly lines, and she can handle only occasional changes to the manner and method of performing her assigned work.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from November 1, 2013, through the date of this decision.

(Tr. 17-25 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given those limitations, the Court should remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

4

is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

### B. Assignments of Error

According to Plaintiff, the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to properly analyze Listing 1.04A for [l]umbar [degenerative disc disease ('DDD')] as required by <u>Radford[ v. Colvin</u>, 734 F.3d 288 (4th Cir. 2013)]" (Docket Entry 15 at 5 (bold font and single-spacing omitted)); and

2) "[t]he ALJ failed to properly analyze Listing 1.04A for cervical DDD as required by <u>Radford</u>" (<u>id.</u> at 10 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (<u>See</u> Docket Entry 17 at 4-14.)

### 1. Lumbar DDD

Plaintiff's first issue on review contends that "[t]he ALJ failed to properly analyze Listing 1.04A for [l]umbar DDD as

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

required by *Radford*." (Docket Entry 15 at 5 (bold font and single-spacing omitted).) More specifically, Plaintiff contends that "Listing 1.04A is met when the claimant suffers from a spinal disorder such as herniated nucleus pulposus, osteoarthritis, DDD or facet arthritis resulting in compression of a nerve root characterized by neuro-anatomical distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, a positive straight-leg raising test." (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A).) Plaintiff additionally points out that "all of the criteria of Listing 1.04A must be documented within a consecutive twelve-month period," and thus that "no requirement [exists] for all symptoms to appear simultaneously." (Id. at 9 (citing Social Security Acquiescence Ruling 15-1(4), Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine with Evidence of Nerve Root Compression, 2015 WL 5697481, at *5 (Sept. 23, 2015) ("AR 15-1(4)")).) According to Plaintiff, "[d]espite the presence of lumbar DDD and all the signs and symptoms required by Listing 1.04A, the ALJ merely noted that 'there [wa]s no evidence of nerve root compression with motor loss and sensory or reflex loss.'" (Id. at 5 (quoting Tr. 18); see also id. at 6-8 (describing evidence Plaintiff believes reflects the signs and symptoms required by Listing 1.04A (citing Tr. 497-98, 500, 523, 958, 988, 1406, 1657, 1674-75, 1681, 1694, 1748, 1754,

9

1790, 1795-96, 1801-02, 1815, 1822, 1834, 1837, 1948, 1951, 1989)).)  Plaintiff maintains that "an ALJ's [s]tep [t]hree analysis is insufficient if he merely states that the claimant does not meet Listing 1.04A without comparing the criteria of the [L]isting to the specific facts of the case" (id. at 9 (citing Radford, 734 F.3d at 295)), and that the ALJ's discussion of "some of the [relevant] evidence . . . at subsequent steps of the [SEP] . . . did not [] explain why [Plaintiff] d[id] not meet or medically equal in severity the criteria of Listing 1.04A" (id. (citing Bates v. Berryhill, 726 F. App'x 959, 960 (4th Cir. 2018))).

Plaintiff further faults the ALJ for according "'great weight' to the opinion of [medical expert] Dr. Daniel Picard" (id. at 5 (quoting Tr. 18)) that Plaintiff's lumbar DDD did not meet or equal Listing 1.04A (see Tr. 1728-29), because 1) "Dr. Picard plainly stated that he only reviewed the record through [E]xhibit 36F" (Docket Entry 15 at 5 (citing Tr. 1726)), but **all** of the signs and symptoms of Listing 1.04A occurred in documents submitted **after** Dr. Picard's review" (id. (emphasis supplied by Plaintiff)), and 2) "Dr. Picard was mistaken about the contents of the documents that he did review, as there are multiple straight leg raise tests ('SLR') occurring in [E]xhibits 1F through 36F" (id. (citing Tr. 750, 761, 770, 779, 795, 1243, 1251)), as well as "documented radicular pain, weakness with the left [extensor hallucis longus

('EHL')], [and] numbness and tingling [in] the L5 distribution and in an S1 distribution on the right" (id. at 7 n.1 (citing Tr. 1657)). Plaintiff's contentions on all fronts have merit and warrant remand.

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify.").

For Listing 1.04A, a claimant must offer proof not only of a "[d]isorder[] of the spine," such as "degenerative disc disease,"

11

but also "result[ant] compromise of a nerve root," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04, and:

> [e]vidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Id., § 1.04A. "Listing 1.04A requires a claimant to show only what it requires him [or her] to show: that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." Radford, 734 F.3d at 294. In other words, a "claimant need not show that each symptom was present at precisely the same time — i.e., simultaneously — in order to establish the chronic nature of his [or her] condition[, n]or need a claimant show that the symptoms were present in the claimant in particularly close proximity." Id.; see also AR 15-1(4), 2015 WL 5697481, at *5 (providing that ALJs must first "decide whether the evidence shows that all of the medical criteria in paragraph A [of Listing 1.04] are present within a continuous 12-month period" and, if so, must "determine whether the evidence shows — as a whole — that the claimant's disorder of the spine caused, or is expected to cause,

nerve root compression continuously for at least 12 months" (emphasis added).[6]

In this case, the ALJ provided the following analysis of whether Plaintiff's lumbar DDD met or medically equaled the requirements of Listing 1.04A:

> [Plaintiff]'s spinal impairments do not meet [L]isting 1.04, disorders of the spine, as there is no evidence of nerve root compression with motor loss and sensory or reflex loss, spinal arachnoiditis requiring bihourly positional changes, or lumbar spinal stenosis resulting in the inability to ambulate effectively, as defined in [Section] 1.00B2b. In so finding, the [ALJ] gives great weight to the opinion of medical expert [Dr. Picard], who found [Plaintiff] does not meet or medically equal any of the medical listings. The expert supported his opinion with citations to the record, including [Plaintiff]'s lack of arachnoiditis or use of an assistive device, as well as her lack of atrophy, weakness, and positive [SLR] testing on examinations. This is consistent with the objective medical evidence of record, and as such, the [ALJ] gives the opinion great weight.

(Tr. 18 (emphasis added) (internal parenthetical citations omitted).) As discussed in more detail below, the ALJ erred in two respects in his analysis of Listing 1.04A.

First, in light of evidence showing that Plaintiff could meet the criteria of Listing 1.04A in the continuous, 12-month period between March 2018 and March 2019, the ALJ failed to adequately

---

[6] Effective April 2, 2021, the SSA rescinded AR 15-1(4) as a "result of publication of the final rule, 'Revised Medical Criteria for Evaluating Musculoskeletal Disorders,'" which recodified Listing 1.04A as Listing 1.15 and clarified that that the "symptoms, signs, findings, and impairment-related physical limitations [in Listing 1.15] . . . must appear in the medical record within a consecutive 4-month period." Rescission of Acquiescence Ruling 15-1(4), 85 FR 79063, 2020 WL 7209986 (Dec. 8, 2020). As the ALJ issued the decision under review on July 9, 2019 (see Tr. 26), this Recommendation will apply Listing 1.04A as interpreted by AR 15-1(4).

13

explain his finding that "there [wa]s <u>no</u> evidence of nerve root compression with motor loss and sensory or reflex loss" (<u>id.</u> (emphasis added)). To begin, an MRI of Plaintiff's lumbar spine on February 1, 2018, documented "[a]dvanced degenerative disc height loss with a moderate sized circumferential disc bulge [which] combine[d] with moderate facet arthropathy to result in moderate bilateral neural foraminal stenosis without significant spinal canal narrowing" at L5-S1. (Tr. 1406.) In March 2018, Plaintiff's orthopedic surgeon, Dr. Keith Jackson, noted that, although the MRI did not show "evidence of <u>advanced</u> compressive pathology," the disc "bulge <u>contact[ed]</u> the right S1" nerve root. (Tr. 1412 (emphasis added).)[7] Dr. Jackson further noted that, because Plaintiff's cervical spine did not demonstrate <u>any</u> "compressive pathology," he recommended that Plaintiff "continue to avoid surgery if at all possible." (Tr. 1412.)

In contrast, Dr. Jackson recommended anterior lumbar interbody fusion (<u>see</u> Tr. 1413) to alleviate Plaintiff's "lumbar spondylosis

---

[7] Prior to Plaintiff's October 2016 hemilaminectomy and diskectomy, the record contained more clear evidence of nerve root compression. (<u>See, e.g.</u>, Tr. 499-500 (7/31/15 lumbar MRI showing moderate disc protrusion paracentral to the right at L5-S1 causing minor <u>compressive</u> changes of the traversing S1 nerve roots, right greater than left), 523 (11/23/13 lumbar MRI showing moderate herniated nucleus pulposus at L5-S1 with mild to moderate mass effect on the right S1 nerve root with bilateral neuroforaminal stenosis), 1109 (remark of Physician Assistant Chad A. Frazer in May 2016 that Plaintiff had a "known L5-S1 disc bulge which <u>enroache[d]</u> upon the right S1 nerve root" (emphasis added)), 1112 (June 2016 interpretation of 2015 lumbar MRI by neurosurgeon Dr. Dennis Campbell that Plaintiff's disc herniation at L5-S1 "<u>compress[ed]</u> the traversing bilateral S1 nerve roots" (emphasis added)).) The record prior to June 22, 2018, however, lacked findings of lower extremity motor loss. (<u>See</u> Tr. 451-54, 518-618, 642-97, 727-1074, 1107-80, 1199-1441; <u>see also</u> Tr. 1657 (reflecting first finding of lower extremity weakness in record on 6/22/18).)

14

[at] L5-S1 with <u>radiculopathy</u>" (Tr. 1412 (emphasis added)). Thus, Dr. Jackson's statements suggest that he found the presence of at least <u>some</u> neural compression of the S1 nerve root on the right; however, the ALJ did not discuss that opinion from Dr. Jackson in his decision. (<u>See</u> Tr. 21-24.) If the ALJ disagreed with Dr. Jackson and interpreted Plaintiff's February 2018 MRI to show <u>no</u> evidence of nerve root compression, he should have explained why and, absent such an explanation, the Court cannot meaningfully review the ALJ's finding that that "there [wa]s <u>no</u> evidence of nerve root compression" (Tr. 18 (emphasis added)). <u>See</u> <u>Hannah v. Saul</u>, No. 5:20CV19, 2020 WL 7346210, at *4 (E.D.N.C. Nov. 19, 2020) (unpublished) (holding that MRI showing "minimal caudal extension of disc material" and physician's opinion that "nerve root [] look[ed] edematous" presented "at least conflicting evidence that [the plaintiff] suffer[ed] from a disorder of the spine resulting in compromise of a nerve root"), <u>recommendation adopted</u>, 2020 WL 7338064 (E.D.N.C. Dec. 14, 2020) (unpublished); <u>Artis v. Berryhill</u>, No. 5:17CV387, 2018 WL 3622779, at *5 (E.D.N.C. July 30, 2018) (unpublished) ("Where the ALJ did not discuss whether 'mass effect upon the exiting nerve root' is synonymous with or may imply 'nerve root compression,' as that term is used in Listing 1.04A . . ., the ALJ fails to discuss relevant evidence that weighs against his decision, and fails to describe expressly what reasoning led to [the] conclusion that such evidence does not require a finding that

15

[the] plaintiff meets or equals Listing 1.04[A]." (internal quotation marks, brackets, and citations omitted) (citing Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016))); Drotar v. Colvin, No. 7:13CV265, 2015 WL 965626, at *6 (E.D.N.C. Mar. 4, 2015) (unpublished) (rejecting the Commissioner's "assert[ion] that [the ALJ's] error [in finding Listing 1.04A not met] was harmless, because the evidence . . . of nerve root compression presented an ambiguity that the ALJ was required to resolve").

Moreover, the record shows that Plaintiff exhibited the remaining signs and symptoms required by Listing 1.04A during the continuous, 12-month period from March 2018 to March 2019. At the same March 2018 evaluation during which Dr. Jackson recommended Plaintiff's lumbar surgery, Dr. Jackson also documented a positive SLR test on the right and mild paresthesias in the L5 nerve root distribution. (Tr. 1412.) Dr. Jackson's colleague, Dr. Daniel Williams, noted weakness in Plaintiff's left EHL as well as paresthesias in the L5 and S1 nerve root distributions on the right in June 2018. (See Tr. 1657; see also Tr. 1748 (reflecting a weak left EHL and decreased sensation in the left L5 nerve root distribution in August 2018).) Plaintiff's treatment records at Integrated Pain Solutions from February to October 2018 consistently documented pain in Plaintiff's back, hips, and legs, decreased lumbar range of motion, decreased sensation in various lumbar nerve root distributions, and positive SLR tests (see Tr.

1417-18, 1429-30, 1435-36, 1441-42, 1674-75, 1680-81, 1693-94, 1789-90, 1795-96, 1801-02), notwithstanding Plaintiff's anterior lumbar interbody fusion surgery on August 23, 2018 (see Tr. 1735-38, 1754-56). Moreover, the day before Plaintiff's fusion surgery, a practitioner at Integrated Pain Solutions documented 4/5 strength in Plaintiff's lower extremities (see Tr. 1796), and findings of decreased lower extremity strength continued at office visits following Plaintiff's surgery from October 2018 through March of 2019 (see Tr. 1801-02, 1815, 1837). The above-described evidence of neuro-anatomic distribution of pain, decreased lumbar range of motion, weakness, sensory loss, and positive straight leg raising tests during the continuous, 12-month period between March 2018 and March 2019 renders deficient the ALJ's conclusory, unsupported finding that "there [wa]s no evidence of nerve root compression with motor loss and sensory or reflex loss" (Tr. 18 (emphasis added)). See Radford, 734 F.3d at 295 (requiring "[a] full explanation by the ALJ" where the "medical record includes a fair amount of evidence supportive of [the plaintiff's] claim" that he or she meets a listing); Kee v. Berryhill, No. 1:15CV1039, 2017 WL 788306, at *5 (M.D.N.C. Mar. 1, 2017) (unpublished) (Peake, M.J.) ("Given that [the p]laintiff has presented 'a fair amount of evidence' that she meets Listing 1.04A, the ALJ's failure to adequately explain the reasoning behind his contrary conclusion precludes the Court from undertaking a 'meaningful review' of his

step three determination." (quoting Radford, 734 F.3d at 296)),
recommendation adopted, slip op. (M.D.N.C. Mar. 17, 2017)
(Schroeder, J.).[8]

Second, the ALJ also erred by according "great weight" (Tr.
18) to Dr. Picard's opinion that Plaintiff did not meet or
medically equal Listing 1.04A (see Tr. 1728-29) for two reasons.
First, Dr. Picard expressly noted that he reviewed only Exhibits 1F
through 36F of the record (see Tr. 1726), which contained most (but
not all) of Plaintiff's treatment for her lumbar DDD through June

[8] Plaintiff's evidence does not show whether the positive SLR tests occurred in
both the supine and sitting positions, as expressly required by Listing 1.04A.
That fact, however, does not make the ALJ's failure of explanation harmless. The
ALJ here did not find that Plaintiff failed to meet the criteria of Listing 1.04A
because she did not demonstrate positive SLR tests in both the supine and sitting
positions. (See Tr. 18.) In fact, the ALJ actually found that the record lacked
positive SLR tests (see id.), a finding which, as discussed above, the record
overwhelmingly contradicts. See Hinton v. Saul, No. 1:20CV1503, 2021 WL 4060650,
at *4 (D. Md. Sept. 7, 2021) (unpublished) ("[The Commissioner]'s argument
. . . for why the ALJ's conclusion that Listing 1.04A is not met hinges on
whether the positive [SLR] tests were conducted in the sitting and supine
positions. This argument must fail. Such explanation does not appear in the
ALJ's narrative discussion, and it would be error for this [c]ourt to 'engage[ ]
in an analysis that the ALJ should have done in the first instance.'" (quoting
Fox v. Colvin, 632 F. App'x 750, 755 (4th Cir. 2015)) (internal parenthetical
citation omitted)); see also Alicia S. v. Saul, No. CV 20-313, 2021 WL 391881,
at *4 (D. Md. Feb. 4, 2021) (unpublished) ("[T]he ALJ was correct to find that
there was no evidence of positive [SLR] tests in both the sitting and supine
positions." (emphasis added)); Norris v. Saul, No. 9:18CV2973, 2020 WL 255703,
at *4 (D.S.C. Jan. 17, 2020) (unpublished) ("The ALJ found . . . that the [SLR]
test cited by [the plaintiff] did not pass muster for the purposes of Listing
1.04A because 'the medical record does not indicate specifically whether the
[SLR] tests were sitting, supine, or both . . . .' The law makes clear that such
an absence in the record provides an adequate basis for an ALJ to determine that
a claimant did not satisfy Listing 1.04A's evidentiary requirements." (emphasis
added) (internal citation omitted)). Notably, effective Apr. 2, 2021, an ALJ
must presume that a practitioner conducted an SLR test in both the supine and
sitting positions, unless evidence exists to the contrary. See 20 C.F.R. Pt.
404, Subpt. P, App'x 1, § 1.00C2a ("When the medical source reports that a
clinical test sign(s) is positive, unless [the ALJ] ha[s] evidence to the
contrary, [the ALJ will] assume that [the medical source] performed the test
properly and accept the medical source's interpretation of the test. For
example, [the ALJ] will assume a[n SLR] test was conducted properly (that is, in
sitting and supine positions), even if the medical source does not specify the
positions in which the test was performed." (emphasis added)).

22, 2018 (see Tr. 1654-59 (Exhibit 36F)). Thus, Dr. Picard did not consider the majority of evidence containing the above-described findings showing Plaintiff could meet Listing 1.04A during the continuous, 12-month period from March 2018 to March 2019 (see Tr. 1672-1708, 1734-1839, 1861-1903, 1941-53). Despite that fact, the ALJ neither acknowledged that significant evidence post-dated Dr. Picard's opinion, nor reconciled Dr. Picard's opinion with that later-appearing evidence, rendering the ALJ's decision to accord that opinion great weight unsupported by substantial evidence. (See Tr. 18.)

Moreover, Dr. Picard erred in his evaluation of the evidence that he did review and appeared to misunderstand the requirements of Listing 1.04A. In that regard, Dr. Picard noted that the portions of the record he reviewed did not contain positive SLR tests (see Tr. 1729), but that statement ignores multiple positive SLR tests from April 29, 2015, to April 17, 2018 (see Tr. 746, 750, 761, 770, 779, 795, 807, 868, 1243, 1251, 1259, 1269, 1275, 1281, 1321, 1327, 1340, 1412, 1417, 1429, 1435, 1441). In addition, Dr. Picard stated that his "understanding of [L]isting 1.04A would require . . . demonstrated atrophy, weakness, and [SLR] test" (Tr. 1729 (emphasis added)), i.e., that meeting Listing 1.04A requires findings of both atrophy and weakness. Listing 1.04A, however, makes clear that a claimant need only show "motor loss (atrophy with associated muscle weakness or muscle weakness)," 20 C.F.R. Pt.

404, Subpt. P, App'x 1, § 1.04A (emphasis added). The ALJ's failure to address these errors in Dr. Picard's opinion further undermines the ALJ's decision to afford that opinion "great weight" (Tr. 18).

For the foregoing reasons, Plaintiff's first issue on review establishes prejudicial errors by the ALJ in analyzing whether Plaintiff's lumbar DDD met or medically equaled Listing 1.04A and thus entitles Plaintiff to remand.

## 2. Cervical DDD

Plaintiff next asserts that "[t]he ALJ failed to properly analyze Listing 1.04A for cervical DDD as required by *Radford*." (Docket Entry 15 at 10 (bold font and single-spacing omitted).) In particular, Plaintiff observes that "the record [] establishes all of the signs and symptoms of Listing 1.04A for cervical DDD," and that "[t]he only difference between Listing 1.04 for the lumbar and cervical spines is that the cervical spine listing does not require a positive [SLR] test because the lower extremities are not involved." (Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A); see also id. at 10-12 (detailing evidence Plaintiff believes demonstrates her cervical DDD meets Listing 1.04A (citing Tr. 717, 778, 795, 816, 926, 972, 1073, 1103-04, 1108-10, 1112, 1158, 1229, 1319-21, 1353, 1672-75, 1678-81, 1691-94, 1787-90, 1793-95, 1799-1801, 1815, 1819-21, 1834-37, 1948-51)).) Plaintiff emphasizes that, despite that evidence, the ALJ "erroneously stated

20

that there was 'no evidence of nerve root compression with motor loss and sensory or reflex loss'" (id. at 12 (quoting Tr. 18)), as well as improperly "relied upon the opinion of Dr. Picard, who [] was mistaken as to the contents of the records that he did review" (id. (citing Tr. 18, 1729)).

Plaintiff presents a less compelling case that she could meet Listing 1.04A with respect to her cervical DDD. Specifically, although Plaintiff has pointed to evidence of neck and arm pain, reduced cervical range of motion, weakness, sensory loss, and reflex loss between April 2016 and April 2017 (see id. at 10-11 (citing Tr. 972, 1073, 1103-04, 1108-10, 1112, 1158, 1229)), her April 2017 cervical MRI does not reflect any express finding of nerve root compression (see Tr. 1158). That MRI showed mild central canal stenosis from C5-7, as well as mild left neural foraminal stenosis at C5-6. (See Tr. 1175-76.)[9] As an initial matter, the MRI's findings of central canal stenosis lack relevance to Listing 1.04A, which requires evidence of nerve root compression. See Whitted v. Berryhill, No. 7:17CV124, 2018 WL 5291861, at *5 (E.D.N.C. May 17, 2018) (unpublished) ("[The plaintiff] identifies an MRI conducted in February 2014, which confirmed spinal cord compression at the C4-5 level due to a disc osteophyte complex causing severe canal stenosis . . . [as well as]

_____

[9] An earlier cervical MRI in 2015 showed mild effacement of the thecal sac without contact with or displacement of the spinal cord and no stenosis at C5-7. (See Tr. 711-12.)

an MRI conducted in October 2014, which showed that she was still suffering from residual moderate to severe spinal canal stenosis at the C4-5 and C5-6 levels with deformity of the cord due to the compression . . . . However, [the plaintiff] does not identify any evidence of nerve root compression, erroneously arguing that Listing 1.04A requires evidence of compression of the spinal cord *or* nerve root." (internal quotation marks and parenthetical citations omitted)), recommendation adopted, 2018 WL 4664124 (E.D.N.C. Sept. 28, 2018) (unpublished).

Furthermore, a finding of mild neural foraminal stenosis standing alone, without further indication of nerve root involvement, likely does not suffice to demonstrate nerve root compression. See Richardson v. Colvin, No. 2:14CV13354, 2015 WL 4772399, at *23 (S.D.W. Va. May 18, 2015) (unpublished) (finding no error in ALJ's determination the plaintiff did not meet Listing 1.04A because "foraminal narrowing seen on MRI may [] be present without any accompanying symptoms"), recommendation adopted, 2015 WL 4772412 (S.D.W. Va. Aug. 12, 2015) (unpublished); Pearson v. Colvin, No. 4:12CV23, 2013 WL 3243550, at *10 (E.D.N.C. June 26, 2013) ("The MRI does not contain medical statements confirming the existence of compression and [the plaintiff] has not produced any other supporting evidence."); see also Edwards v. Astrue, No. CIV.A. 3:09-3187, 2010 WL 5575482, at *7 (D.S.C. Dec. 22, 2010) (unpublished) (holding that the plaintiff "presented evidence of

Case 1:20-cv-00710-CCE-LPA   Document 20   Filed 12/13/21   Page 22 of 25

nerve root compression" where "MRI of [the p]laintiff's lumbar spine . . . revealed multi-level disc osteophyte complexes which produced mild bilateral neural foraminal exit stenosis impinging upon the exiting left L3 nerve root" (emphasis added)), recommendation adopted, 2011 WL 121799 (D.S.C. Jan. 12, 2011) (unpublished). Moreover, unlike Plaintiff's lumbar DDD, providers treating her cervical DDD interpreted her 2017 cervical MRI to show "mild" findings causing "non-focal symptoms" that did not warrant surgery. (Tr. 1180.)

On the other hand, the ALJ's reliance on Dr. Picard's opinion to find that Plaintiff's cervical DDD did not meet Listing 1.04A muddies the waters. Dr. Picard noted that Plaintiff's 2015 cervical MRI showed a "disc protrusion at C6-7 without stenosis" (Tr. 1727 (referencing Tr. 711-12)), but did not discuss Plaintiff's 2017 cervical MRI (see Tr. 1727), despite its presence in the records Dr. Picard reviewed (see Tr. 1726 (indicating Dr. Picard reviewed record through Exhibit 36F); see also Tr. 1175-76 (2017 cervical MRI within Ex. 16F)) and its more recent date and more significant findings (see Tr. 1175-76). Thus, although Plaintiff's 2017 cervical MRI does not present a compelling case of nerve root compression, because Dr. Picard did not consider that MRI, the ALJ's assignment of "great weight" to Dr. Picard's opinion did not explain the ALJ's finding that "there [wa]s no evidence of nerve root compression" (Tr. 18).

Given the existence of evidence that potentially conflicts with the ALJ's finding that no evidence of nerve root compression existed, Dr. Picard's failure to consider that evidence, and the recommendation to remand this matter for further evaluation of whether Plaintiff's lumbar DDD meets or medically equals Listing 1.04A, the ALJ should, upon remand, also further consider whether Plaintiff's cervical DDD meets or equals Listing 1.04A.

### III. CONCLUSION

Plaintiff has established errors warranting remand.[10]

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include re-evaluation of whether Plaintiff's lumbar and cervical DDD meets or medically equals the criteria of Listing 1.04A in accordance with Radford and AR 15-1(4). As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) should be granted in part, i.e., to the

---

[10] Plaintiff's Memorandum alternatively asks for "reversal of the ALJ's decision for an award of benefits." (Docket Entry 15 at 12.) In this case, the Court should opt for remand, because Plaintiff's Memorandum does not adequately develop a cogent argument justifying reversal for an award of benefits (see id.), and because remand constitutes the proper course when ambivalence exists in the medical record and the ALJ failed to provide an adequate explanation, see Radford, 734 F.3d at 296 (concluding that district court abused its discretion in reversing for award of benefits rather than remanding for ALJ to re-evaluate Listing 1.04A where conflicting evidence existed and ALJ's decision "regarding the applicability of Listing 1.04A [was] devoid of reasoning"); see also Tammy B. v. Kijakazi, No. CV 1:21-814, 2021 WL 4991581, at *12 (D.S.C. Oct. 26, 2021) (unpublished) ("Although the record documents the criteria required to meet Listing 1.04(A), it is inappropriate for the court to reverse and remand the case for an award of benefits in this matter, given the lack of explanation for the ALJ's consideration of Listing 1.04(A).").

24

extent it requests remand, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 13, 2021